May it please the Court, Mr. Nielsen, I'm Paul Sigelman, I'm representing the appellant and the plaintiff in this case. I'd like to reserve half of my time for the closing. Directing my attention first to the question of whether there was any limitation upon the waiver that has already been found by this Court to be valid, that's the waiving the 60-day provision and proceeding by the adjuster's report. Defense now argues there's a $7,500 limitation. Indeed, at the time of the events in this case, what the adjuster focused Mr. PECAROVICH on was the adjuster's report and the adjuster's report was going to be prepared, that was going to take a great deal of time, and that, as the testimony is before the Court, Mr. PECAROVICH was told, quote, do nothing on your own. Wait for Mr. Rossi. The defense would now ---- If you were told you need to submit a waiver, affirmatively, if you were affirmatively told you need to submit a loss, a loss, a proof of loss form. No. I believe this testimony, Your Honor, is the fact that I was told that he was going to take care of everything. I was to do nothing, that we would have to get the report, and in the prior ruling Once it became an issue in the case, either before the case was filed or ---- What was the issue? No. When the need for a proof of loss became an issue, did he ---- why didn't Mr. PECAROVICH just fill out a form and say, you know, I lost $500,000 in damages due to the flood of my property on such-and-such a day, and here's what I lost. I lost my house. I lost this. I lost that. You know? It only became an issue after the lawsuit was filed. Okay. After the lawsuit was filed, did you submit one? The 60-day, and I believe, Your Honor, the law of the case already decided was that plaintiff would be allowed to prove that what Mr. Rossi said was a waiver and that, indeed, the 60 days had all run, he couldn't cure that circumstance, and that, therefore, he was relying upon what Mr. Rossi was doing, which was clearly to take the time to investigate a engineering and soils problem. When you say law of the case, are you referring to PECAROVICH 1, the Ninth Circuit's earlier case? Yes, Your Honor. Yes. And then that's clearly what the Court ---- what this Court said and what I'm relying upon, that he would be allowed to prove that. That there was a waiver. That there was a waiver. Right. Based upon the evidence. In fact, I think the Court in that decision said that, as I recall, that even by inference you could prove it. But, indeed, the Court reserved that to us. And I believe that that's currently the law of the case. Well, they brought up the defense. Now, is it a waiver of the 60 days or is it a waiver of just the proof of loss form? I guess in this particular instance, it's both. Well, it's a waiver of the ---- there are two different waivers involved. There's a waiver that's in the contract itself, the insurance contract, that says at our option we all state can wait the 60 days. That's what I'm relying upon. There was a different waiver that the defense has brought to the attention of the Court that the adjuster could at any time walk into somebody's home, take a look around and say I don't need a proof of loss, I can pay you $6,000, whatever. That's a different kind of waiver than the insurance policy contract waiver. But that's not an issue here. That's not an issue here, because our claim was for the policy. The issue here was the Article 9J provision, which provides that at the option the all state, not FEMA, but all state could make a decision to waive and proceed by the adjuster's report. Right. And I guess so we're asked to decide what on remand and what the district court decided was that they couldn't by operation of law waive it. In light of that $7,500? Yeah. They were saying that the $7,500 is in the adjuster's manual, not disclosed to anybody but the insurance company. Right. And that, indeed, that provision, while the regulations and the statute says that any interpretation or any mandatory provision must be subject to notice and comment, publish and publication in the Federal Register. And even though they didn't do that, that's their rule, the Court says I'm still going to think that that should come into play. It's almost like a three-card Monte Shuffle. They don't show you the card they have up their sleeve. I mean, if Mr. Peterewicz has ever been told, by the way, you're only going to get $7,500 if you wait for this report and spend almost that amount of money on an engineering report, obviously he wouldn't have gone in that direction. So that waiver has nothing to do with this case. What this case is about is that the insurance contract is fully self-contained. It says in the policy all you have to look at is in this policy, is the law of this policy. And they're saying now that, well, we didn't say $7,500 in the policy, but we quietly and secretly knew that's what was going on. And I don't think that that is the – first of all, it doesn't comply with the Administrative Procedure Act of notice and comment procedure to get a regulation into place. And it doesn't comply even with, as I cited in my brief, the particular agency regulations that says any interpretation even of what we do will be published in the Federal Register. And that was never published. It was never told. Well, it's kind of – I mean, it would be kind of difficult for, you know, a policy holder to – you know, it's one thing to be on top of the policy, to know what's in your policy. It's quite another thing. And it's also, you know, reasonably – you know, you could say regulation is never contained in a – you know, in the Code of Federal Regulations. Homeowners should be aware of. But I think it's quite another thing to say that a homeowner should – needs to be aware of a limitation that's contained in a claims manual that is in the possession of the insurance – of the insurance company. I don't follow that logic. I mean, I know I'm going to ask some questions, but it's not for that. Indeed, Your Honor, by a very recent publication of the agency itself, which I brought to the Court's attention by my filing of a notice for judicial notice, even in their tips to adjusting your claim, their two-page statement that is put right on the face of their webpage, a quick link. Here's what you do. They don't mention it. They still don't talk about it. They say that you are supposed to cooperate and work with your adjuster. He will make a calculation. They never disclose it to anyone. Can I ask a slightly different question? Your – I'm not quite clear what your second cause of action is, the cause of action for breach of the implied covenant of fair dealing, the tortious cause of action. As I understand it under California law, you can only bring that – a claim for breach of the implied covenant of good faith and fair dealing if you've proven first that there was a breach of contract. I'm not sure I follow the Court's question on that. Well, in order to recover – that tort is not an independent tort under California law. You have to first prove that the insurance company breached the contract before you could be entitled to the, you know, additional claim which could warrant punitive damages. Well, if you're saying the additional claim is in regard to the bad faith provision. Right. Yes. I see what you're saying. In that regard, Your Honor, in this instance where they told him to – we have to get engineering reports and that will be necessary for us to make the evaluation, you couldn't file a 60-day notice because you don't even know what the damages  You have to file it under penalty of perjury. But – so they go ahead and they ask him to go and bring the engineers and the soil people and the construction people to the site and to get those reports and we will pay for those reports quite separately, quite collaterally. We will pay for those reports. And as you know, it took them time and time again, request the engineers won't release their reports because you haven't paid for them. And they delay – I think there were six requests by Mr. Rossi that's in the record And then they finally say, well, we lost the checks. It took them one year. And indeed, after the lawsuit was filed, before they even made those payments. So they couldn't go forward in regard to making the evaluation. And that in itself, Your Honor, is a breach not only of – because that's a separate breach, but it's also, I think, bad faith because they wouldn't allow Mr. Prokarevich to get to the point where the claim could be evaluated. In other words, the bad faith is in not allowing the condition to happen where they would grant or deny the claim. They prevented the reports from being issued. And I want to point out that Mr. Rossi and Mr. Prokarevich, there's no dispute between them. They're working together. The dispute arises at the company headquarters when this mysterious and shadowy Mr. Beale, that nobody knows what his involvement is. He's not an employee of FEMA. Allstate says, we don't know what authority he had. We don't know who he is. But he writes a letter saying, you should deny this claim. Now, I made thorough objections orally in the record as well as extensive written objection to anything from Mr. Beale coming in and being considered. And it's not a hearsay, but there was no indication that he had any expertise, authority, or that he knew what he was doing. And I believe, Your Honor, that the company, if that was to be admitted, if it's not admitted, then they are certainly in bad faith. They never got a chance to make the grant of the policy. And if it is admitted, indeed, he made his decision by looking at the flowers on the property. He said, well, the flowers weren't bent over. There couldn't be a flood. I mean, this is the this is, I guess, a denial by looking at at at the, you know, informing the company that way and telling them, well, while you've told Mr. Rossi to go out and hire all these engineers, you should be hiring your own engineers and not listen to whatever Mr. Rossi's engineers state. Who would pay for damages on the bridge of implied covenant of good faith and fair dealing, the government or Allstate? Allstate, Your Honor. I cited the court recent decisions in that regard. And indeed, in the in the Richmond decision, Mr. Nielsen argued they make that comment that the bad faith part has nothing to do with the government. That's a claim against the company itself. And that there's a distinct difference between an action on the contract and an action on what the adjuster's conduct has done. In fact, that case draws the distinction that there is the government left substantial autonomy for marketing and claims adjustment. And that autonomy, therefore, has to be checked by the bad faith law of the individual states. And that's a Fifth Circuit decision. And they squarely say it's mistaken to say the government's going to pay for that. Are there competitors to Allstate that offer this W.Y.O. insurance, flood insurance in California? I didn't hear that. Are there competitors to Allstate that offer this W.Y.O. flood insurance in California? Yes. I'm just saying, do they write the flood insurance in California? No. Do they have competitors who also do so? I can't. I'm not aware. I know that this particular policy was purchased, as we've indicated, as in the record, by the advertisement that Allstate made. You know, El Nino's coming. Buy a policy for your home. Mr. Prokarevich goes and meets with the Allstate representative. He purchased the policy from them. Oh, his policy's other insurance was with Allstate. He thought he was being treated the same way. And then, in effect, part of the decision made after the lawsuit is filed is, oh, by the way, by the very terrain that your home is on, you could never have a flood, even though they sold the policy to them for flood and took the premium. And they get a 15 percent commission and administrative fee. It amounts to almost 30 percent of the premium sold. If they pay benefits, right? Pardon? If they pay benefits. No, that's just for selling the policy. Just for selling the policy? Just for selling the policy. What if they pay benefits? Do they get any commission on that? Yes. Well, how do they get paid for when they pay benefits? What do they get? Okay. They get the two or three provisions in the code. They get all their expenses. They get a 3.3 percent commission of the amount of claim. Now, some courts have been stating, well, gee, that would give them a motive to approve  But actually, the contrary is true, particularly in this case, where if they exercise that option to proceed by the adjuster's report, then by the very provision in the policy, the insured is going to be required to sign that report and to swear to the adjuster's report of the loss. They can come in, once they've done that, and say, here, sign this or you lose your claim. The 60 days is run. You have to go by the adjuster's report. If you sign this, our work is over. We don't have to do anything more. We make 3.3 percent without effort. And, indeed, that could be the case unless it's checked by bad faith rules. That would be bad faith. Well, I don't quite follow that, but I guess. But they seem to be, if they pay benefits, it doesn't seem to be any real loss for them. If they had paid the benefits. If they pay benefits. Yeah. If they pay the benefits. If they don't pay benefits, then it seems like they get themselves into this situation where they may or may not be reimbursed by FEMA, depending upon the claim. By the way, there's a provision, even if they don't pay the benefits, they do get some small fee, regardless. You wanted to reserve. I'm sorry. I didn't mean to interrupt, but I just noticed that you wanted to reserve half your time. You only have five minutes. I would like to not. That's fine. Good morning, Your Honor. It's Jerry Nielsen on behalf of Ball State Insurance Company. Your Honor, I can answer the heart of your question, but it's going to take me a moment. This issue of detrimental reliance and a homeowner not knowing what's in a FEMA claims manual. This case and how my client has approached it from day one, and particularly after the Ninth Circuit's ruling, stems from how the Ninth Circuit approached this same issue 18 years ago in Wagner v. Director FEMA. In this flood policy, which is itself a Federal law, this Court held that FEMA has barred detrimental reliance upon claims adjusters, and the policy candidly warns people not to rely. That was done in 1983, when the policy was completely rewritten, when they started this operating system, and the reason for it was that people were coming to Federal judges and saying, an adjuster said this, an adjuster did that, and judges were not enforcing the law. So they got rid of it. What you've got in this policy, according to the Ninth Circuit precedents, is a specific duty upon an insured to file that proof of loss. And he was. But there's a clause there that says there's a waiver. And I'm going to get there, Your Honor. This is going to take me a minute. You've got a couple of provisions that the courts and all of the circuits have looked at these provisions together. The first one is the proof of loss requirement, and it says you have this duty. And in Wagner and Flick, this Court said that's upon the insured, and the Federal judge, as a matter of constitutional law, can't not enforce that. The next provision is this candid warning, where we say you can't have a detrimental reliance claim upon claims personnel. Then you've got the provision that says only FEMA can waive the rule, and then you've got this provision that's not directed at the insured at all. The policy, it says, only FEMA can waive the rule. Article 9d. Article 9d of the. Of Mr. Bukharovich's policy. Article 9d. Hold on one second. Let me just check. Article 9. Article 9. Article 9d. Article 9, ABCD. This policy cannot be amended, nor can any of its provisions be waived without the express written consent of the Federal insurance administrator. So that's in his policy, which is a law. Well, then, but we said in Perkovich 1 that you. Correct. All State may, at your option, waive the requirement for completion of the form. And that's how we interpret this. Okay. So now we've got to figure out what does in certain circumstances mean. And there is a Federal regulation, which is, and the policy says the agreement of insurance is issued pursuant to the Act and the regulations, and the regulation says to these companies, you've got the insureds that are the beneficiaries under these contracts, you've got these companies that are issuing them, both stand equally before the law. Insured has his obligations. I have mine. The Federal regulation at 62.23i1 says you will adjust these pursuant to company standards guided by the NFIP claims manuals, knowing disputes that the claims manual says that the in certain circumstances, certain cases, is limited to the small claims of only $7,500. I submit as an interest. What it says, though, here I have the claims manual for 1986. Correct. It says, page 113 of the manual, I don't know, base number 000400, proof of loss requirement and waiver. Proof of loss is required by NFIP on all advance payments as well as on any paid claim. However, the proof of loss form may be waived by the NFIP on claims under $7,500. So let me ask you. It says form. Is there a form that is required? No. The proof of loss, the proof of loss form, that is said interchangeably. The proof of loss is a form. Is it a form? You can do it on a napkin if you want it. But they do have a form on their website for ease of use that people can use. But if you look at all of the times that FEMA has said that exact same thing in the manuals, it has always been the rule ever since back in the 80s when they adopted the new policy. So what you're saying is even though an adjuster were to come out to my house and say, you don't need to submit a form. Don't worry about it. Don't worry about it. Don't worry about it. You don't need to submit a form. Correct. Okay. And he says, you know, we're going to assess all the damage here and, you know, we'll take care of it. And so then comes back after 60 days and says, ah, the claim is more than $7,500. It's after 60 days, claim denied. And I'm a homeowner and I look at my policy and I say, hmm, where does it say $7,500? How do we fix that problem? Where do I find $7,500? I can't. If I go to the policy, it's not in the policy. If I go to the Code of Federal Regulations, which is promulgated by, you know, notice and comment, I don't find it. And I go on the website. Apparently I don't find it. I didn't check this morning, but apparently I won't find it on the website. But if I'm smart enough, really on top of my game, I would be wise enough to ask the adjuster, may I please have all of your claims manuals so I can check to see if that $7,500 limitation is in the claims manual? Judge, I need a minute. And what is the claims adjuster going to say? Who are you kidding? I'm not giving you my claims manual. That doesn't make any sense to me. I need a minute. I'm sorry. Explain to me why it should make sense. Your Honor, with all respect, I'm trying. All right. I want to hear it. Okay. This has been in place. It's been operating effectively for decades. I need to explain to you what is done. This is a federal regulatory scheme that works in catastrophes. It's been up and operating through 20 hurricane seasons. And it produces a sliver of lawsuits. So something about this is working well. I just need to be able to explain what happens. You have this law that says to that insured participant in this federal program, you've got to do this. That law also says you can't claim reliance upon the adjuster. You've got to do it. This insured has his own public adjuster who he was going to be paying money to for helping with the claim. Why isn't he suing him? He wants you to change the law when he's not suing his PA. His line of attack to you is, I didn't follow my duties under the law to get that proof in, so I want to rely upon something said by an adjuster as my basis for why it was reasonable to me as the insured to rely upon a right that the company had to waive in certain circumstances. He can't get there. You said in Wagner he can't do reliance. The Supreme Court in Heckler says you can't have detrimental reliance as a matter of public policy. Now, this gets to the important part, because where you're going, Your Honor, will hurt this program. In Wagner, this Court held that it would be against public policy to penalize insurance companies for continuing to evaluate claims after deadlines run. We can do one of two things. The minute that 60-day hits, we can shut down every claim and say you're out, or we can let all those independent adjusters out there continuing to work those claims in hope that we're going to find some more claims that are payable, and then we all go off to FEMA and get a waiver. You won't find a single case in the history of the program where any citizen insured has ever complained of how FEMA exercises its waiver authority. This Court, in flip, said the judiciary as a matter of constitutional law must enforce the law. FEMA has reserved to itself the right to waive the law. Here's where we're heading. I want to put in focus what we're talking about doing. This Court says there's a compelling governmental interest in uniformity of decision such that the benefits that a Californian can get may or was going to get be the benefits of these Floridians with four hurricanes. What we are proposing is despite the current operating system, we're going to establish a rule of law within one circuit that 108 different companies' claims managers, Your Honor, they're not competitors, but they're all participants and they're all bound by the same rules. 108 different companies' claims managers all have their own discretion to waive the rule no matter the size of the claim. And he wants to apply the state bad faith claim so that we can influence those claims managers' decision. Your Honor. No, go ahead. I'm listening. Okay. So now we've got to go. The two are not. You don't have to. The two are not intricately connected. All right.  Here's the direct, actual conflict. If my client looks to federal law, the regulation explicitly states you will follow our claims manual. The claims manual says you can't waive this above $7,500. Now let's look at state law. If counsel is correct, we should move on beyond the proof of law stuff. We should get to the coverage issue and we should pay him some money if he's right on the coverage issue. These companies can't write or not write a check. In this instance, if they follow federal law, according to him, he violates state law. If I follow state law and write him some money, we've got a conflict. Counsel, if it's so apparent that there's this $7,500 limit on the waiver of a proof of loss or the waiver of the 60-day period for filing proof of loss, why didn't you raise it until after our court had issued its first decision in a PFR? I mean, if it's so clear that any homeowner insured should know about this, how come it took all states so long to raise it in the first place? I have to concede that point. I became involved in this case after I saw it come up as a published decision of the Ninth Circuit. I'm in New Orleans. I realized the national implications of what the court did because it hadn't been told that, and that's when I came involved in the case. Well, if all state expects to – I mean, you've got the system, which – okay. I mean, I follow exactly, although I didn't tell arguments, so I thank both counsel for this, how the system works. But you have this system where the insured is not being told certain caveats about it, and the – even all state, the employees on the ground in the insurance companies don't get it and don't do it. But you're going to charge the insureds with that. Now, I mean, I understand the federal policy and all of that, but California has a really strong policy, too, against – toward – and we're not – Louisiana, I don't know what Louisiana is, but California has a pretty important policy of informing the insured of all of these things and holding the insurance company to what it says in its contract. All right. I fully understand what the court is saying, and I concede the point. But the problem we've got is one of analysis. You only get to this problem of the $7,500 and the right of the plaintiff to complain about that if you ignore one problem, one policy provision, to get to another one. This Court said you can't rely. The U.S. – We also said, though, in Perkovich 1, in the first case here, which we're – which is the law of this case, is that all state could waive the proof of loss requirement. You then came back on rehearing and specifically amended the decision to state. All state is raising this for the first time, and we are specifically stating we are not deciding this issue. Right. And that's because when you don't raise an issue for the first time below, then you've lost it. You've waived it. I mean, the way I see this case is that you may be right on this legal point, but your predecessor counsel waived it in its original proceedings in this case, and we do not have to consider that argument. And, Your Honor, I would never presume to tell you what you should do in terms of your court processes. What I would state in opposition to that is we do have the constitutional impediments to waiver, and we do have a national system in place. What are the constitutional impediments to waiver? In Flick, what the court is – what the court held is that the judiciary can't waive these rules. Here's the weird thing about this case.  We didn't waive the rules. You waived the rules by not raising it when you should have raised it at the very beginning of this case. Okay. There had been no claim. We would have to brief that, Your Honor, because that's not been the claim made. The claim made is that there's law of the case, but you, on rehearing, said this was not law of the case. Of course, because you didn't raise it in a timely way. You didn't raise it in a timely way in the first case. Okay. There are two other points that I would like to make. I don't want to lose my time. All right. If I may. One is you ask the question of who would pay the extra contractual judgment. FEMA has always said to the courts, without exception, that if such a judgment were rendered, they would pay that. You have that in Davis v. Travelers, which counsel says mirrors his claim. Judge Alsop included in his ruling, when he asked for an amicus from FEMA, he says FEMA came to me and they said all of this is preempted. Federal law governs this exclusively. And he wrote in there that FEMA has told me that they would pay any resulting judgment. But why would FEMA do that? I mean, certain insurers are notoriously poorly behaved when it comes to paying off claims. It would seem to me that would be they ought not to. Great question. The government, you know, as a matter of policy, should not take the responsibility for compensating people for that. But they should, in fact, put the responsibility on the bad actors. I'm going to take you through it. You start with 4019 of the Act. Congress said to FEMA, you make a system that's going to work in these catastrophes. What FEMA did was turn this insurance model on its head. And they set up a compensation scheme where both the adjusters and the companies profit by paying claims. They took all incentive to lowballing. Yes, you've got something squirrelly here. I'm talking about the system. All right. And I agree with you. So what is the remedy when something squirrelly happens? Perfect. In Flint, you have the waiver authority. Mr. Pekarovich, at any time, even today, even after this Court rules, could go to FEMA and say, FEMA, I've got a valid payable claim under this policy. I didn't get my proof of loss in because of this, that, and the other, and go to FEMA and ask for a waiver. As in the Flint decision, they won't do that. My opinion is they know that underneath all of this, this is not a payable claim. But that's not before you. Time hasn't run out on them, Dean. No. This goes back to the U.S. Supreme Court in Lynch v. United States, a 1934 war insurance policy case, where the Court said Congress sets the remedies for federal insurance programs. The courts are not to do that. Another problem, you've got the McCarran-Ferguson Act that's cited, the brand-new U.S. Third Circuit decision. The states have never had any regulatory control over this program, and here's the problem. Insurance is a matter of interstate commerce. The states get to regulate it because of the McCarran-Ferguson Act. But there's an exception. When Congress enters the business of insurance, its rules govern. You're not displacing otherwise applicable state law. There's no rule. So this presumption that state law would play a role here unless there's preemption is not correct. You could get rid of the state law bad faith claim either under the Commerce Clause argument or under the preemption argument or under the argument of Heckler v. Community Health Services that you can't have reliance in a federal insurance program. Right now, today, the state of the law is as follows, and I'm going to say this kind of not loyally. Who said what to whom when claims can't work at all for any reason. FEMA, if you've got a problem in a cat where some adjuster said something under ward can fix any problem. They've been doing it for decades. They've been doing it beautifully. No one has ever complained. This plaintiff doesn't want to go to the executive branch. He wants the judicial branch to change the rules of the road radically so that he can claim reliance upon an adjuster. It seems like the proof of loss requirement at its heart is to make sure that FEMA funds or these flood insurance funds are not, you know, not wrongfully utilized. That is, that there is, you know, adequate audit records and documentation for how the funds are paid out. Even under this clause, it allows all states to waive the loss, the proof of loss requirement. It does require that if they, it says, add our option, swear to an adjuster's report of the loss, which includes information. It says you will be required to sign and add our option, swear to an adjuster's report of the loss, which includes information about your loss and the damages sustained. I suspect that one of those reports probably contains all the information that's required in J9, J3 or whatever the policy. Well, what they're talking about is an adjuster's report, you know, a $7,500 claim. It's a truncated thing. But the purpose of the proof of loss requirement is twofold. One, to prevent fraud. If you're going to have all these insurance companies in a tax situation cranking out lots of dollars, and it's billions in huge, well, not billions, but Tropical Storm Allison in Texas was a billion dollars for one storm. You need people swearing under oath for all of this. Well, it gives them the option here. It says here, under this policy clause, if you don't, if we don't require, if we waive the loss form, apparently, we, the insurance, all state, can require you to swear under oath that everything on this report is true. But we can only, that policy provision, though, is specifically directed at the company. It doesn't say, Mr. Insurer, you have any rights or obligations at all. The other provision is directed at the insurer. It says you have to swear. No, but under Perkovich 1, our case, that deals with this clause. Right. It says that all state has the authority under that clause to waive the proof of loss requirement. And that's correct. Even if you go to that clause, in the end, it still does require a verification by the homeowner, by the policyholder. It wasn't done in this case. Well, hold on. Well, that's another, that's a whole different part of Perkovich 1. But just going to this clause in the policy, it does require, even if there's been a waiver by all state, it does at bottom, at some point, it does require a signature by the homeowner, and it could be even under oath if requested by all state. Yes, sir. So the heart of it, which is to prevent fraud, seems to be satisfied, even if there's been a waiver of the formal proof of loss requirement, the form. All right. And the only question for me is whether or not it can be, this waiver can be limited to 7,500. Now, Judge Wardlaw has, you know, you may have procedurally, in the litigation, waived that argument, but I still have a hard time saying that that limitation, which is contained in a claims manual that's in the possession of the insurance company, constitutes a rule of law that's automatically incorporated in this insurance policy. If FEMA wants to do that, they certainly can. They can do it very easily. All they have to do is publish a regulation and say, you only have, or rewrite this standard form policy and say, you can only waive proof of loss requirement if the loss is under 7,500, and put it right in the policy. But you're taking a regulation that was directed at the insurance company and saying that they should have put it in there with regard to something that the insured would rely upon, when no one has ever construed this in this way, and this Court has put in a binding precedent, and the policy itself says you can't have the reliance, which is kind of the case. It's not a matter of reliance. It's a matter of, we have Perkovich 1, which says they can waive it. All State can waive it. And I'm agreeing with that. Hold on. The question is, is that limited to only $7,500? And my proposition to you is Perkovich 1 says that, yes, you can waive it. It then specifically is amended by the judges who wrote it to say, we are not deciding if this, yes, you can waive it, is limited to $7,500. That question is now before this panel today, 62.23i1 puts a legal obligation on me, just like there are obligations upon the plaintiff, that I have to adjust these things pursuant to those manuals, and there's nobody disputing that for 20 years What you want to do is take that requirement and say that it's tantamount to a legal law, a rule of law, and therefore it's contained within the body of the policy. And it's just, I don't see, for the life of me, I don't see how you get there. But, you know, it's very interesting. All this is very interesting. And I had no idea all this even existed. One final point that you are way over your time. Less than 2 minutes. Less than 1 minute. Less than 1 minute. Less than 1 minute. Less than 1 minute. It's been a long week, let me tell you. I'm not sure if you make your point, we'll get it if you go on too long. All right. Less than 1 minute. In Flick, one of the things this Court held was the compelling interest in uniform redistribution. On these issues, you now have the Third Circuit and the Sixth Circuit saying there is preemption, period. Preemption is different. Yes. Okay. I think we've heard you and we'll go, yes, we'll go back and look at this further. And I actually think that counsel had reserved a few minutes, too. Thank you for hearing me. Thank you. Not only can the policyholder not know to ask for the claims manual, but in this case, and it's in the record, I asked for the claims manual and discovery, and they were denied to me on the claim of privilege and confidentiality. They wouldn't even give them to me. They never like to give those down. And that's why I said it's kind of ridiculous to suggest that a homeowner could ask to see the claims manual, because it was my experience as a State court judge and as a district court judge that whenever anybody asked for claims manual, it was like a major battle. And second of all, the breach of the contract was the fact that they promised and had Mr. Bekerewitsch rely that he rely on the nine, the article 9J provision that they were going by the alternative. When they denied the claim, they denied the claim because you didn't comply with the 60 days. So they fished him in on one side and then they denied on another, which is a breach of the agreement, that they were going to proceed by the very provision in the contract for the alternative. So they were using the contract for their own fraud. That is the company itself. I'd like to point out that in that regard, as to whether there is State law on this, that, and I submitted this to the court for judicial notice, that right today, the official position of FEMA at their website, under those tips on presenting your claim, they say you work with the adjuster and, quote, every State government has a department of insurance regulated by State insurance commissioner's offices. These offices have policyholder service sections designed to assist insurance policyholders. They're directing, FEMA is directing them on the WYO policies to go to the State and to the State and, obviously, the State regulation, the State law. I would point out that in the very recent decision, in the Gallup decision, which I've submitted to the court, argued by Mr. Nielsen, the court, in a very fine and extensive analysis, points out that FEMA is without congressional authority to have the courts apply or not apply State law. That is not only not preempted, they're without authority to say you can't, that FEMA can't apply State law. But only Congress can say that. Pardon? Only Congress. That is the argument in the Gallup case. Congress has recognized that there are some instances in the flood statute here, flood insurance statute, that there are some instances where they seem to recognize that there's going to be litigation arising out of this under State law that is okay. But that doesn't mean that under the preemption doctrine that certain kinds of lawsuits may nonetheless still be preempted. Does it mean, does it mean that everything is fair game under State law? I believe that the contract, whether there's, the contract, whether there's coverage is under Federal law, and the conduct of the adjuster is pursuant to the, or is checked by the State laws of bad faith. And that seems to be the distinction made in Richmond and made both in Gallup. As I say, Mr. Nielsen argued those cases, and the courts ruled against him on that. The same authority is cited to this Court. And lastly, Your Honor, the point I was trying to make, and we just read under the waiver provision, once relying upon that and waiting the year, they could go to Mr. Pikerevich and say, here's the written report, you have to sign it off if you want to get paid. Instead of getting 250, we're giving you 200. We don't want to work anymore. There's a real benefit to them using it in that way unless they're checked by the bad faith law. Lastly, I also point out that in the Fifth Circuit Richmond case that had recently come down, they make the analysis and specifically state that the Act itself, under the terms of the SFIP, prevent a private insurer from obtaining Federal funds to cover the adjuster's liability for fraud, for bad faith. And ---- Let me ask you two very minor questions. Your fraud claim seems to be out of the picture, along with your negligence claim. Is that correct? I don't believe it is, Your Honor, but I believe in any event it's part of bad faith. Like the fraud claim? Yes. But your negligence claim is gone. It's not part of this case anymore. You had a negligence claim in the complaint. Negligence claim, yes. That's out? That's out. Okay. But the bad faith, Your Honor, relies upon the failure to give equal interest to Mr. Pikerevich, failed to investigate, failing to look into the evidence that he was presenting. And State law is very clear that you have to at least look at the evidence that he's presenting. He's waiting for those reports. They don't pay for them. They don't get them until the lawsuit is filed. And then they go ahead and say, well, it's going to deny our claim to protect ourselves. And I think, Your Honor, lastly, point brought up, but I'm against one of the largest casualty companies in the world. And under FEMA, you know, the agency and all State are in each other's pocket. I'm going up on serial appeals. What's going to happen next? They're going to get down to the court and they're going to say, well, the jury should be told there's a $7,500 limit. We're going to have an up-and-down matter where a contingency lawyer cannot possibly hold out on the $250,000 policy limit that's written by the government. Have you thought of going to FEMA? Has your client gone to FEMA to get its claim? Yes, Your Honor. During the time of the actual claim, and I believe this is in the record, he went to FEMA to make an ordinary, you know, a homeowner's claim. He said, wait a minute. You got a policy from all State. You're out of here. We can't give you anything. That was the end of his confrontation with FEMA. Thank you, counsel. Pekarovich v. All State is submitted. This session of the Court is adjourned. Thank you. Thank you. All rise. This Court will discuss and extend adjournment. Thank you, Your Honor. I think not. All right. I'll walk. It hasn't been my case this whole time. It's actually a disagreement. I don't even know what he's saying.  It's his. That's fine. Even if he's not my case, I've got a problem with his. I've got a problem with his. I've got a problem with his. I've got a problem with his. It's not my case. No, I've got a problem. All right. All right. Thank you. Thank you. Thank you. Thank you. Thank you. Come in. Thank you.
judges: Hall, Wardlaw, Paez